IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| HANNAH M. COTTER,<br>   PLAINTIFF, | §<br>§<br>§ |
| VS. | § CIVIL ACTION NO. 4:21-CV-748-P<br>§ |
| COMMISSIONER, SOCIAL SECURITY<br>ADMINISTRATION,<br>   DEFENDANT. | §<br>§<br>§<br>§ |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

#### I. STATEMENT OF THE CASE

*Pro-se* Plaintiff Hannah M. Cotter ("Cotter") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability and disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). Cotter protectively filed her applications in May 2015, alleging that her disability began on November 11, 2014. (Transcript ("Tr.") 11, 124; *see* Tr. 258-69.) After her applications were denied initially and on reconsideration, Cotter requested a hearing before an administrative law judge ("ALJ"). (Tr. 124; *see* Tr. 75-120, 149-65.) The ALJ held a

1

hearing on April 21, 2017 and issued a decision on August 23, 2017 denying Cotter's applications for benefits. (Tr. 61-74, 121-133.) On July 25, 2018, the Appeals Council denied Cotter's request for review. (Tr. 138-42.) Subsequently, on January 9, 2019, the Appeals Council vacated its prior action of July 25, 2018 and remanded the case to an ALJ for resolution of several issues, including further evaluating Cotter's mental impairment in accordance with the special technique described in 20 C.F.R. §§ 404.1520a and 416.920a and further considering the claimant's maximum residual functional capacity ("RFC"). (Tr. 145-46.)

On November 14, 2019 and September 30, 2020, the ALJ held additional hearings. (Tr. 11; *see* Tr. 28-60.) Thereafter, on October 13, 2020, the ALJ again denied Cotter's applications for benefits. (Tr. 11-22.) On April 29, 2021, the Appeals Council denied Cotter's request for review, leaving the ALJ's October 13, 2020 decision as the final decision of the Commissioner. (Tr. 1-5.) Cotter subsequently filed this civil action seeking review of the ALJ's decision.

## II.   STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). First, the claimant must

not be presently working at any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), (b), 416.920(a)(4)(i). "Substantial gainful activity" is defined as work activity involving the use of significant and productive physical or mental abilities for pay or profit. *See id.* §§ 404.1510, 416.910. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. Pt. 404 Subpt. P, App. 1; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d).[1] Fourth, if disability cannot be found based on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f), 416.920(a)(4)(iv), (f). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experiences. *Id.* §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.* If the Commissioner meets his burden, it is

---

[1] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity to determine the most the claimant is able to do notwithstanding her physical and mental limitations. 20 C.F.R. §§ 404.1520(a)(4), (e), 416.920(a)(4), (e). The claimant's RFC is used at both the fourth and fifth steps of the five-step analysis. *Id.* §§ 404.1520(a)(4), 416.920(a)(4). At step four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

up to the claimant to then show that he cannot perform the alternate work. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988) (per curiam). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision. *Id.* (emphasis added). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009). This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## III.   ISSUES[2]

In her brief, Cotter lists the following eight issues:

1. Qualify under section or sections in The Social Security Blue Book. ("Listing of impairments").

2. Has a true disability.

3. Had only one job.

4. Considering Both Severe and Non-Severe impairments.

5. Insufficient weight given to The Physician's Notes.

6. Why did Social Security wait so long for a Psychological Exam with I Q [sic] and Mental Status Exam.

7. ALJ's Decision Didn't Discuss Serious Side Effects of Your Medication[.]

8. Sorting Through Errors.

(Plaintiff's Brief ("Pl.'s Br.") at 1-2.)[3]

## IV.   ALJ DECISION

In his October 13, 2020 decision, the ALJ performed the five-step sequential evaluation process for determining whether a person is disabled. (Tr. 11-22.) The ALJ first noted that Cotter met the disability insured status requirements under Title II of the SSA through June 30, 2015.

---

[2] As Cotter is proceeding *pro se*, the Court has attempted to liberally construe Cotter's submissions as well as generally scan the record for any evidence that might support Cotter's arguments. However, it is not the Court's duty to scour the record for evidence supporting Cotter's arguments beyond the evidence pointed to by Cotter. *See Perrodin v. Comm'r of Soc. Sec. Admin.*, No. 6:21-cv-02584, 2022 WL 1207403, at *4 (W.D. La. Apr. 1, 2022) (stating that it is "not the court's responsibility to scour the record looking for evidence to support a party's arguments").

[3] The Court notes that, in her Reply, Cotter also raises several additional issues. The Court, however, will not consider issues raised for the first time in a reply brief. *See Flores v. AT&T Corp.*, No. EP-17-CV-00318-DB, 2018 WL 6588586, at *9 (W.D. Tex. Nov. 8, 2018) ("The Reply is not the appropriate place for a party to raise new issues for the first time."); *Bruce v. McCain*, No. CV-15-3814, 2017 WL 1161136, at *2 (E.D. La. Mar. 29, 2017) ("This Court will not consider issues when they are raised for the first time in a reply brief.")

(Tr. 13.) The ALJ then stated that Cotter had not engaged in any substantial gainful activity since November 11, 2014, the alleged onset date. (*Id.*) The ALJ further found that Cotter had the following "severe" impairments: "bipolar I disorder and learning disorder with impairment in mathematics." (Tr. 14.)

Next, the ALJ held that none of Cotter's impairments or combination of impairments met or equaled the severity of any impairment in the Listing. (Tr. 14-17.) As to Cotter's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: She is able to perform simple, routine, repetitive tasks, but not at a production rate pace. She is able to perform simple work-related decisions. She is able to occasionally interact with supervisors and coworkers[ ] but can never interact with the public. She is able to tolerate few changes in a routine work setting.

(Tr. 17.) Next, the ALJ opined that Cotter was unable to perform any of her past relevant work as a "cashier-checker." (Tr. 20.) Relying on the testimony of a vocational expert ("VE"), the ALJ, however, found that there were jobs that existed in significant numbers in the national economy that Cotter could perform. (Tr. 21.) Consequently, the ALJ determined that Cotter was not disabled. (Tr. 21.)

## V. DISCUSSION

### A. <u>Sections 12.2 and 12.03 of the Listing</u>

In her brief, Cotter argues that "[a]ny individual with bipolar disorder can be eligible for disability benefits if he/she meets the evaluation criteria listed in the Social Security Administration's Blue Book, and if he/she has received a medical vocational disability endorsement based on the person's residual functional ability, education and age." (Pl.'s Br. at 4-

5 (emphasis omitted).) Plaintiff then, without setting forth any argument, cites the requirements of sections 12.02 and 12.03 of the Listing. (Pl.'s Br. at 5-10.)

To obtain a disability determination at Step Three, a claimant must show that her impairments meet or equal one of the impairments in the Listing. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). As a threshold matter, the ALJ is responsible for ultimately deciding the legal question whether a listing is met or equaled. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1996). Whether a claimant's impairment meets the requirements of a listed impairment is usually more a question of medical fact than opinion, because most of the requirements are objective and simply a matter of documentation, but it is still an issue ultimately reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at *3 (S.S.A. July 2, 1996). When determining whether an impairment medically equals a listing, the Commissioner considers all relevant evidence in the record about the impairments, including findings from one or more medical or psychological consultants designated by the Commissioner. 20 C.F.R. §§ 404.1526(c), 416.926(c).[4] Medical equivalence is found when an impairment "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a).

The claimant has the burden of proving that her impairment or combination of impairments meets or equals a listing. *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990), *superseded by statute on other grounds as stated in McCloskey v. Colvin*, No. CV 15-5223-SP, 2016 WL 5745077 at *7 (D. Cal. Sept. 30, 2016); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). "For a claimant to show that his impairment matches [or meets] a listing, it must meet *all* of the specified medical

---

[4] Relevant evidence does not include the claimant's vocational factors of age, education, and work experience. 20 C.F.R. § 404.1526(c).

7

criteria." *Zebley*, 493 U.S. at 530. An impairment, no matter how severe, does not qualify if that impairment exhibits only some of the specified criteria. *Id.* The court will find that substantial evidence supports the ALJ's finding at Step Three if the plaintiff fails to demonstrate the specified medical criteria. *Selders*, 914 F.2d at 619–20.

"[B]efore the absence of reasons for adverse findings requires rejection of the unfavorable decision, a court must determine whether the error was harmless." *Inge ex rel. D.J.I. v. Astrue*, No. 7:09-cv-95-O, 2010 WL 2473835, at *9 (N.D. Tex. May 13, 2020); *see Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have [not] been affected."). To be entitled to relief, the claimant must establish that the ALJ erred and that the ALJ's error casts into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

While Cotter does not actually assert any argument, it appears that Cotter is arguing that the ALJ erred in considering whether her impairments met sections 12.02 (which deals with neurocognitive disorders) or 12.03 (which deals with schizophrenia spectrum and other psychotic disorders) of the Listing. While the ALJ did not explicitly consider these two sections, the ALJ did consider whether Cotter met sections 12.04 (which deals with depressive, bipolar, and related disorders) and 12.11 (which deals with neurodevelopmental disorders) of the Listing. (Tr. 15.) While the ALJ's decision does not explicitly mention sections 12.02 or 12.03 of the Listing, the absence of explicit reference to these sections does not merit reversal.

To begin with, sections 12.02, 12.03, and 12.04 each contain three paragraphs of criteria— A, B, and C, while section 12.11 contains two paragraphs of criteria—A and B. 20 C.F.R. §

8

404.1520a(c)(3); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.02-12.04, 12.11.[5] The Paragraph B criteria are identical across Listings 12.02, 12.03, 12.04, and 12.11 requiring that the claimant suffer from an impairment or combination of impairments resulting in the following:

> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (*see* 12.00F):
>
> 1. Understand, remember, or apply information (*see* 12.00E1).
>
> 2. Interact with others (*see* 12.00E2).
>
> 3. Concentrate, persist, or maintain pace (*see* 12.00E3).
>
> 4. Adapt or manage oneself (see. 12.00E4).

*See* 20 C.F.R. Pt. 404, Subpt. P, App. §§ 12.02(B), 12.03(B), 12.04(B), 12.11(B). In addition, the Paragraph C criteria are also identical across sections 12.02, 12.03, and 12.04, requiring:

> [A] medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [the] mental disorder (*see* 12.00G2b), *and*
>
> 2. Marginal adjustment, that is, [the claimant has] minimal capacity to adapt to changes in [the claimant's] environment or to demands that are not already part of [the claimant's] daily life (*see* 12.00G2c).

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02(C), 12.03(C), 12.04(C).

To meet sections 12.02, 12.03, 12.04, or 12.11 of the Listing, the burden is on Cotter to show that she met the Paragraph A and B criteria or the Paragraph C criteria (for sections 12.02, 12.03, and 12.04). The ALJ, however, explained in his decision that Cotter did not meet Paragraph

---

[5] Section 12.11 contains two paragraphs of criteria—A and B. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.11.

B of section 12.04 or 12.11 or C of section 12.04. In making this determination, the ALJ evaluated each of the four broad areas of mental functioning[6] and found, after analyzing the opinions of the State Agency Psychological Consultants, the testimony and statements made by Cotter, statements made by Cotter's boyfriend, and evidence in the medical records and treatment notes, that Cotter had a moderate limitation in each functional area. (Tr. 15-16.) Based on these findings, the ALJ next concluded that Cotter's mental impairments did not satisfy the paragraph B criteria because such impairments did not cause at least two "marked" limitations or one "extreme" limitation in the four areas of functioning. (Tr. 15-17.) In addition, the ALJ found that "the evidence fails to establish the presence of the 'paragraph C' criteria because the claimant's reports of independence in most daily activities and her reports of improvement with treatment discussed below are inconsistent with a finding that she has achieved only marginal adjustment with treatment." (Tr. 17.)

Cotter has pointed to no evidence showing that the ALJ's determinations regarding Paragraphs B for sections 12.04 and 12.11 and Paragraph C for section 12.04 were in error and not supported by substantial evidence. Consequently, any error by the ALJ in failing to mention sections 12.02 or 12.03 is harmless error as their Paragraph B and C criteria are identical to the Paragraph B criteria in sections 12.04 and 12.11 and the Paragraph C criteria in section 12.04. *See Saleeba v. Berryhill*, No. H-17-3538, 2019 WL 1386817, at *5 (S.D. Tex. March 5, 2019). Moreover, Cotter has made no attempt to demonstrate that any of the additional required criteria

---

[6] The four broad areas of functioning under paragraph B are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A.2.b. The five rating points are: (1) no limitation; (2) mild limitation; (3) moderate limitation; (4) marked limitation; and (5) extreme limitation. *Id.* at § 12.00F2.

of sections 12.02 or 12.03 of the Listing were met. Because Cotter has not met her burden and there is no evidence that the ALJ's decision at Step Three was not supported by substantial evidence, remand is not required.

### C. Has a True Disability

Cotter next argues in her brief that she has a "true disability." (Pl.'s Br. at 11.) In support, Cotter states:

> I have been found to have Bi-Polar and Manic-Depressive Disorder with Depression.
>
> Medication Given by Doctor.
>
> 1. Depakote
>
> 2. Seroquel
>
> Bipolar 1 is "classic" or "textbook" manic-depressive illness, with **serious and damaging episodes of both mania and depression**. In a severe manic episode, a person can lose all touch with reality. Left untreated a manic episode can last anywhere from a few days to several years.

(Pl.'s Br. at 11.)

While unclear, it appears that Cotter is claiming that she should be found disabled because she suffers from bipolar disorder and manic-depressive disorder. In this case, the ALJ, as set forth above, found that Cotter suffered from she severe impairments of "bipolar I disorder and learning disorder with impairment in mathematics." (Tr. 14.) However, the "suffering of some impairment does not establish disability; a claimant is disabled only if she is 'incapable of engaging in *any* substantial gainful activity.'" *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992). Cotter has not pointed to any evidence showing that her impairments resulted in limitations that exceed those found by the ALJ. *See Hames v. Heckler*, 707 F.2d 162, 165 ("The mere presence of some

11

impairment is not disabling per se.") Thus, remand on this issue is not required.

### D. Had Only One Job

In her brief, Cotter also states that "Cvs [sic] Pharmacy is the only job I had, and had [sic] not worked since the onset of my medical problem." (Pl.'s Br. at 16.) In this case, the ALJ specifically found that Cotter had not engaged in substantial gainful activity since November 11, 2014, the alleged onset date. In addition, the ALJ also found at Step Four that Cotter could not perform her past relevant work as a "cashier-checker" based on the evidence in the record that Cotter had worked at CVS Pharmacy. (Tr. 20; *see* Tr. 33, 37-38 270, 318.) Thus, the Court finds that the ALJ properly considered the issue raised by Cotter, and remand is not required.

### E. Severe and Non-Severe Impairments

In her brief, Cotter also argues that the ALJ erred in not considering the effect of her non-severe impairments on her ability to work. (Pl.'s Br. at 12.) In support, she states, "A Social Security regulation requires the ALJ to consider the restrictions and limitations caused by *all* of your impairments, even those that are non-severe." (*Id.*)

The ALJ, in discussing Cotter's non-severe impairments, stated:

> The claimant reported during the application process that she had difficulty bending, climbing, and standing due to fatigue, and obesity is a medically determinable impairment that could reasonably be expected to cause this symptom and those limitations. It was established by body mass index values within the obesity category of 30 and above, typically ranging from 30 to 34 during the relevant period. With that said, these are within the mild range of obesity, and the claimant did not exhibit physical examination deficits during the relevant period that would suggest any limitations associated with obesity. Also, the claimant did not complain of her weight during treatment, and she did not allege disability due, in part, to obesity at the time of her application. Therefore, obesity is a non-severe impairment that has not more than minimally affected the claimant's ability to engage in basic work activities during the relevant period.

> The undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.

(Tr. 14 (internal citations omitted).)

"An ALJ must consider all medical and nonmedical evidence to assess the RFC, including evidence pertaining to the claimant's non-severe impairments." *Rodriguez v. Berryhill*, No. H-17-3102, 2019 WL 403860, at *7 (S.D. Tex. Jan. 3, 2019); *see* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). In this case, the ALJ clearly considered Cotter's non-severe impairment of obesity in his decision, explaining that he considered such impairment in formulating the RFC but did not include any limitations based on the evidence in the record. Cotter has not discussed any other non-severe impairment that the ALJ failed to consider. Consequently, the Court finds that remand is not required on this issue.

### F. Insufficient Weight Given to the Physician's Notes

In this section of her brief, Cotter argues that the "ALJ failed to give adequate weight to the opinion of [her] treating physician." (Pl.'s Br. at 13.) In support, Cotter states:

> If the doctor or mental health professional who regularly treats you has completed a Medical Source Statement or Residual Functional Capacity . . . form indicating that you have substantial work-related limitations, and the ALJ didn't give a good deal of consideration to these limitations, you may have solid grounds for appeal.
>
> Under Social Security regulations in effect up until 2017, ALJs were required to give your treating doctor's opinion "controlling" weight in many situations, and to identify and explain what weight they gave all medical source (doctor) opinions. In March of 2017, the rules changed so that all medical opinions are evaluated based on factors such as "supportability" . . . and "consistency" . . . . However, ALJs must still explain which doctors they found most persuasive and how they rated the supportability and consistency of the doctors' opinions.

(Pl.'s Br. at 13-14.)

13

Cotter is correct in that the regulations require the ALJ to consider all medical opinions, including the opinions of a treating physician, in making his disability determination. *See, e.g.*, 20 C.F.R. §§ 404.1520c, 404.1527, 416.1520c, 416.1527. Cotter, however, fails to point to any medical source statement or RFC opinion from a treating sourcing that was not properly considered by the ALJ. The ALJ, in his decision, specifically references treatment records from Cotter's "treating source" several times. (Tr. 19.) However, there does not appear to be a medical source statement or RFC opinion from a treating source that the ALJ failed to consider. Consequently, the ALJ did not err and remand is not required.

### G. Psychological Examination

In her brief, Cotter next asks, "Why did Social Security wait so long for A Psychological Exam with I Q [sic] and Mental Status Exam[?]" (Pl.'s Br. at 14.) Cotter claims that, "without this important information, Social Security[ ] will be over-looking" her "I Q Test Results" and that a "low IQ can be extremely important in a disability case." (*Id.* at 15.)

Once again, Cotter fails to raise an issue regarding the ALJ's decision that the Court can review. The Court has no control over the SSA and its timeline in dealing with social security disability applications or ordering consultative examinations. In this case, Cotter, on February 6, 2020, was evaluated by Rocio Torres-Quevedo, Ph.D. ("Dr. Torres-Quevedo"), at the request of the Disability Determination Services. (Tr. 2309-2319.) The ALJ carefully considered, *inter alia*, the consultative examination, testing results, and opinions by Dr. Torres-Quevedo, as well as the opinions of the State Agency Medical Consultants, the extensive medical records and treatment notes, Cotter's statements and testimony, and Cotter's boyfriend's statements in making his

disability determination. (Tr. 14-20.) Substantial evidence supports the ALJ's decision, and, consequently, remand is not required.

## H. Discussion of Serious Side Effects of Medication

Cotter also argues, in her brief that "Social Security regulations require the ALJ to consider the type, dosage, effectiveness, and side effects of all of a claimant's medications." (Pl.'s Br. at 15.) Cotter claims that, "[i]f, for example, you take pain medication that causes you nausea and fatigue, the ALJ should discuss these side effects and how they would affect your ability to work." (*Id.*)

As to Cotter's medications, the ALJ stated:

> While the claimant testified and reported during the application process that her medication caused drowsiness and dizziness (Ex. 3E/9; 7E/8; 10E/8), which could impact concentration, the claimant specifically asked her treating source in April 2019 to write a letter stating that her medication did not cause drowsiness (Ex. 6F/315), which calls this into question. Also, she clarified that she only experienced dizziness if she got up right after taking her medication (Ex. 6F/244).

(Tr. 16.)

The Court notes that, pursuant to 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv), which set forth how the ALJ is to evaluate the claimant's symptoms, including pain, the ALJ is required as part of the disability determination to consider "[t]he type, dosage, effectiveness, and side effects of any medication" a claimant takes or has taken to alleviate pain or other symptoms. *See Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999); SSR 16-3p, 2017 WL 5180304, at *8 (S.S.A. Oct. 25, 2017). Thus, an ALJ commits error by failing to evaluate side effects or symptoms allegedly caused by medication and their impact on the claimant's RFC. *See Brown v. Barnhart*, 285 F. Supp. 2d 919, 935 (S.D. Tex. 2003); *Bassett v. Astrue*, No. 4:09-CV-142-A, 2010 WL

15

2891149, at *13 (N.D. Tex. June 25, 2010). "Since the error involves a violation of a regulation, reversal and remand is required only if the error is not harmless." *Skidis v. Comm'r of Soc. Sec. Admin.*, No. 3:08-CV-2181-N, 2009 WL 3199232, at *11 (N.D. Tex. Oct. 2, 2009).

In this case, the ALJ did discuss the side effects of dizziness or drowsiness related to Cotter's medication. Even assuming that the ALJ should have discussed in more detail the exact medications Cotter was taking as well as the dosage, effectiveness, and additional side effects, Cotter fails to point to any evidence in the record that shows that any decreased functioning was attributable to any such side effects. *See Bauer v. Berryhill*, No. 7:17-cv-00128-M-BP, 2018 WL 3999687, at *4 (N.D. Tex. July 27, 2018); *Bassett*, 2010 WL 2891149, at *14 ("Because [claimant] fails to point to any specific evidence in the record that shows that any decreased functioning was attributable to such side effects, the Court concludes that any error committed by the ALJ in failing to take into consideration such side effects when formulating [claimant's] RFC is harmless."); *Hickman*, No. H-08-1194, 2009 WL 3190471, at *13 (S.D. Tex. Sept. 29, 2009). Thus, any error was harmless, and remand is not required.

### I. "Sorting Through Errors"

In her brief, Cotter states:

> ALJ decisions almost always contain some error of fact or law that can be argued to the Appeals Council. Social Security regulations and the reviewing federal courts require a great deal of specificity and accuracy in ALJ decisions, and it's a good bet that[,] if an error can be made, it has been made by an ALJ at some point in time. Your chances at the Appeals Council will be improved substantially if you focus on specific, non-trivial mistakes of law and fact, especially those related to your doctor's opinions, your RFC, and the VE's testimony.

(Pl.'s Br. at 16.)

Cotter appears to be quoting from some publication relating to social security disability

appeals. As set forth above, a denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. Because Cotter has presented no specific claim of error in her case, there is no issue for the Court to consider.

## RECOMMENDATION

It is recommended that the Commissioner's decision be **AFFIRMED**.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **August 24, 2022** to serve and file written objections to the United States Magistrate Judge's proposed

findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED August 10, 2022.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv